# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket Nos. 49615, 49817, 49899

PLANNED PARENTHOOD GREAT
NORTHWEST, HAWAII, ALASKA,
INDIANA, KENTUCKY, on behalf of itself, its
staff, physicians and patients, and Caitlin
Gustafson, M.D., on behalf of herself and her
patients,

    Petitioners,

v.

STATE OF IDAHO,

    Respondent,

and

SCOTT BEDKE, in his official capacity as
Speaker of the House of Representatives of the
State of Idaho; CHUCK WINDER, in his
official capacity as President Pro Tempore of
the Idaho State Senate; and the SIXTY-SIXTH
IDAHO LEGISLATURE,

    Intervenors-Respondents.

_____

PLANNED PARENTHOOD GREAT
NORTHWEST, HAWAII, ALASKA,
INDIANA, KENTUCKY, on behalf of
itself, its staff, physicians and patients,
and CAITLIN GUSTAFSON, M.D., on behalf
of herself and her patients,

    Petitioners,

  v.

STATE OF IDAHO; BRAD LITTLE, in his
official capacity as Governor of the State of
Idaho; LAWRENCE G. WASDEN, in his

Boise, August 2022 Term

Opinion filed: August 12, 2022

Melanie Gagnepain, Clerk

**official capacity as Attorney General of the State of Idaho; JAN M. BENNETTS, in her official capacity as Ada County Prosecuting Attorney; GRANT P. LOEBS, in his official capacity as Twin Falls County Prosecuting Attorney; IDAHO STATE BOARD OF MEDICINE; IDAHO STATE BOARD OF NURSING; and IDAHO STATE BOARD OF PHARMACY,**

    **Respondents,**

**and**

**SCOTT BEDKE, in his official capacity as Speaker of the House of Representatives of the State of Idaho; CHUCK WINDER, in his official capacity as President Pro Tempore of the Idaho State Senate; and the SIXTY-SIXTH IDAHO LEGISLATURE,**

    **Intervenors-Respondents.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

In the Matters of the Petitions for Writs of Prohibition.

Wilmer Cutler Pickering Hale and Dorr, LLP, New York and Bartlett & French, LLP, Boise, Idaho, for Petitioners Planned Parenthood, etal.  Alan E. Schoenfeld argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent State of Idaho.  Megan A. Larrondo argued.

Monte Neil Stewart, Las Vegas, Nevada and Morris Bower & Haws PLLC, Nampa, Idaho, for Intervenors Scott Bedke, Chuck Winder and the Legislature.  Monte N. Stewart argued.

_____

BRODY, Justice

The Court held a public hearing on August 3, 2022 to address specific procedural matters the parties were ordered to brief and argue. All parties agree the Court should consolidate all three actions filed by Petitioners for purposes of oral argument and issuing an opinion. Furthermore, all parties agree the Court should not transfer these matters to the district court for development of a

factual record under Idaho Appellate Rule 5(d). The only issues in dispute are whether the Court should stay the enforcement of Idaho Code section 18-622(2) and whether it should continue to stay the enforcement of Senate Bill 1309. For the reasons discussed below, we: (1) consolidate Docket Nos. 49615-2022, 49817-2022, and 49899-2022 for purposes of oral argument and opinion; (2) retain the consolidated cases; (3) deny Petitioners' request to stay the enforcement of Idaho Code section 18-622 in Docket No. 49817-2022; and (4) vacate the stay of the enforcement of Senate Bill 1309 entered by the Court on April 8, 2022 in Docket No. 49615-2022. Oral argument on the merits of the petitions will be held on September 29, 2022 at 9:00 a.m.

## I. BACKGROUND AND PROCEDURAL HISTORY

The Idaho Legislature has enacted two independent statutes criminalizing abortion. In 2020, the legislature passed a law making it a felony for anyone to perform or attempt to perform or assist with an abortion. I.C. § 18-622(2) ("Total Abortion Ban"). This law allows for affirmative defenses to prosecution where the abortion is necessary to prevent the death of a pregnant woman, or the pregnancy resulted from rape or incest that was reported to law enforcement. I.C. § 18-622(3). Recognizing the constitutional impediments presented by *Roe v. Wade*, 410 U.S. 113 (1973), the Total Abortion Ban expressly states it will only go into effect thirty days following "[t]he issuance of the judgment in any decision of the United States supreme court that restores to the states their authority to prohibit abortion . . . ." I.C. § 18-622(1)(a).

A year later, the legislature passed the Fetal Heartbeat Preborn Child Protection Act. *See* 2021 Idaho Laws Ch. 289 (H.B. 366) (originally codified as I.C. §§ 18-8701 to -8708). The Act makes it a felony to perform an abortion on a woman when a fetal heartbeat is detected, except in cases involving a medical emergency, rape, or incest. I.C. § 18-8704 (2021). In its original form, the Act also provided a private cause of action for a woman who underwent an abortion to recover damages from medical professionals who intentionally, knowingly, and recklessly violated the Act. *See* I.C. § 18-8707 (2021). Again, recognizing federal constitutional impediments to implementing the law, the Act expressly provided that it would take effect " . . . immediately upon the issuance of the mandate in any United States appellate court case in which the appellate court upholds a restriction or ban on abortion for a preborn child because a detectable heartbeat is present on the grounds that such restriction or ban does not violate the United States constitution." *See* I.C. § 18-8706 (2021).

In 2022, the Idaho Legislature amended and re-codified the Fetal Heartbeat Preborn Child Protection Act to expand the private cause of action in favor of fathers, grandparents, siblings, and aunts and uncles of the preborn child and to add statutory minimum damages of $20,000. *See* I.C. § 18-8807(1) (2022). Importantly, the amended Act also repealed Idaho Code section 18-8706—the provision which delayed the effectiveness of the Act—and moved the "trigger language" to the section providing criminal penalties for a violation of the Act. *See* 2022 Idaho Laws Ch. 152 (S.B. 1309) and I.C. § 18-8805. This amendment meant the civil liability provision would become effective on April 22, 2022 (pursuant to an emergency clause in Senate Bill No. 1309), but the criminal liability provisions would remain dormant until "triggered."

On March 30, 2022, a week after Idaho Governor Brad Little signed Senate Bill No. 1309 ("Civil Liability Law" or "S.B. 1309") into law, Petitioners filed their first Petition for Writ of Prohibition, Docket No. 49615-2022, challenging the Civil Liability Law on state constitutional grounds. The Court initially agreed to hear the matter on an expedited basis, but subsequently granted a motion to reconsider filed by the State and agreed to give the parties additional time to submit briefing. As part of its Order Granting Motion to Reconsider, the Court also ordered that the implementation of Senate Bill 1309 be stayed to preserve the status quo as requested by the parties: "The parties having both requested action by this Court to preserve the status quo to give the parties the ability to adequately brief this case, pursuant to I.A.R. 13(g) the implementation of Senate Bill 1309 is STAYED, pending further action by the Court." The State subsequently moved to vacate the stay, disputing that it had requested the stay. The Court denied the motion and set the case for oral argument to be held on August 3, 2022.

About three weeks after Petitioners' challenge to the Civil Liability Law was set for oral argument, the United States Supreme Court issued its landmark decision in *Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228 (June 24, 2022). In *Dobbs*, the Supreme Court held: "The Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion. *Roe* and *Casey* arrogated that authority. We now overrule those decisions and return that authority to the people and their elected representatives." 142 S.Ct. at 2284. There is no dispute that the Supreme Court's decision has "triggered" the Total Abortion Ban and the effective date of that ban is imminent. Three days after the *Dobbs* decision was issued, Petitioners filed their second Petition for Writ of Prohibition, Docket No. 49615-2022, this time challenging the Total Abortion Ban under the Idaho Constitution and the Idaho Human Rights Act. Petitioners contend,

4

among other things, there is an implicit constitutional right to procreate and make intimate family decisions that include the right to abortion.

On June 30, 2022, six days after *Dobbs* was issued, the Court vacated the merits argument scheduled for August 3, 2022 and ordered the parties to brief and argue the procedural questions addressed in this opinion and accompanying order. Before the ordered briefing was complete, the United States Court of Appeals for the Eleventh Circuit upheld a Georgia law prohibiting abortions after a detectable human heartbeat, thus "triggering" the criminal liability provisions of the Fetal Heartbeat Preborn Child Protection Act (I.C. §§ 18-8804, -8805). *See SisterSong Women of Color Reprod. Just. Collective v. Governor of Ga.*, __ F.4th __, 2022 WL 2824904 (11th Cir. July 20, 2022) (holding that *Dobbs* foreclosed the abortion providers' challenge to Georgia's fetal heartbeat act).

On July 25, 2022, Petitioners filed their third Petition for Writ of Prohibition, Docket No. 49899-2022, this time challenging the Fetal Heartbeat Ban. Petitioners repeat essentially the same arguments presented in their second petition.

## II. ANALYSIS OF PRELIMINARY STAYS OF ENFORCEMENT

### A. Petitioners' Request to Stay Enforcement of the Total Abortion Ban is Denied.

Petitioners have requested that the Court enter an order staying enforcement of the Total Abortion Ban. We ordered the parties to present argument at the August 3 hearing on whether a stay should be issued. For the reasons discussed below, even if Petitioners have met the legal standard for demonstrating irreparable harm, the request for a preliminary stay of the Total Abortion Ban is denied because Petitioners have not demonstrated a substantial likelihood of success on the merits or a "clear right" to the relief sought.

The Idaho Appellate Rules do not set forth a legal standard governing when a stay should issue. The parties agree that the standard for injunctive relief requires us to look at the likelihood of success on the merits *and* irreparable harm. Notably, Petitioners have asserted: "A stay is proper here because Petitioners have alleged serious violations of the state constitutional rights of the citizens of Idaho *and* are likely to prevail on the merits of their claims." Pet. Br. on Issues Set for Aug. 3 Hearing, p. 4 (Dkt. No. 49817) (emphasis added). (*See also* Resp. Br. on Issues Set for Aug. 3 Hearing, p. 8–15 (Dkt. No. 49817); Pet. Br. on Issues Set for Aug. 3 Hearing, p. 2–9 (Dkt. No. 49615); Resp. Br. on Issues Set for Aug. 3 Hearing, p. 8–15 (Dkt. No. 49615); Interv. Br. on Issues Set for Aug. 3 Hearing, p. 2–16 (Dkt. No. 49615).

When our appellate rules are silent, we will adopt an appropriate procedure or standard based on the "practice usually followed in such or similar cases, or as may be prescribed by the Court or a Justice thereof." I.A.R. 48. While a stay and a preliminary injunction are not identical, they result in a similar procedural outcome: the implementation of a proceeding or rule is halted to preserve the status quo. Thus, the most analogous standard to apply here is the standard for a preliminary injunction under Idaho Rule of Civil Procedure 65(e) which states:

> **(e) Grounds for Preliminary Injunction**. A preliminary injunction may be granted in the following cases:
>
> (1) when it appears by the complaint that the plaintiff is entitled to the relief demanded, and that relief, or any part of it, consists of restraining the commission or continuance of the acts complained of, either for a limited period or perpetually;
>
> (2) when it appears by the complaint or affidavit that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury to the plaintiff;
>
> (3) when it appears during the litigation that the defendant is doing, threatening, procuring or allowing to be done, or is about to do, some act in violation of the plaintiff's rights, respecting the subject of the action, and the action may make the requested judgment ineffectual;
>
> (4) when it appears, by affidavit, that the defendant is about to remove or to dispose of the defendant's property with intent to defraud the plaintiff;
>
> (5) for the defendant upon filing of a counterclaim praying for affirmative relief upon any of the grounds mentioned above in this section, subject to the same rules and provisions provided for the issuance of injunctions on behalf of the plaintiff;

The portion of Rule 65(e) at issue here is subsections (1) and (2).

A preliminary injunction is the "strong arm of equity" which, as an extraordinary remedy, must be exercised with great restraint. *See Bonaparte v. Camden & A.R. Co.*, 3 F. Cas. 821, 827 (C.C.D.N.J. 1830); *see also Munaf v. Geren*, 553 U.S. 674, 689 (2008) ("A preliminary injunction is [a] [. . .] *drastic* remedy[.]" (emphasis added)). Before Idaho became a territory in 1863, the common law supported the view that (1) a preliminary injunction would issue only if the right to the ultimate relief requested was "clear" and (2) such preliminary relief could *not* be issued in "doubtful cases, or new ones, not coming within well established principles":

6

> There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing an injunction; it is the strong arm of equity, that never ought to be extended unless to cases of great injury . . . . The right must be clear, the injury impending or threatened, so as to be averted only by the protecting preventive process of injunction: but that will not be awarded in doubtful cases, or new ones, not coming within well established principles; for if it issues erroneously, an irreparable injury is inflicted, for which there can be no redress, it being the act of a court, not of the party who prays for it. It will be refused till the court [sic] are satisfied that the case before them is of a right about to be destroyed, irreparably injured, or great and lasting injury about to be done by an illegal act; in such a case the court owes it to its suitors and its own principles, to administer the only remedy which the law allows to prevent the commission of such act.

*Bonaparte*, 3 F. Cas. at 827.

Indeed, before we adopted Rule 65 in 1975, we adhered to this understanding and held that a preliminary injunction "is granted only in extreme cases where the right is very clear *and* it appears that irreparable injury will flow from its refusal." *Evans v. Dist. Ct. of Fifth Jud. Dist.*, 47 Idaho 267, 270, 275 P. 99, 100 (1929) (emphasis added). This conjunctive standard is borne out by our cases applying the statutory precursors to what is now Rule 65(e)(1) and (2). *See, e.g.*, *Gilpin v. Sierra Nevada Consol. Min. Co.*, 2 Idaho 696, 702-03, 23 P. 547, 549 (1890) (reaching the question of waste, great injury, or irreparable injury under section 4288, Rev. St. Idaho, *after* explaining that the plaintiff had a presumptive right to the mine by being in possession of it); *Staples v. Rossi*, 7 Idaho 618, 625, 65 P. 67, 69 (1901) (upholding a preliminary injunction where "the plaintiff's complaint shows his right to a certain mining claim; shows that the defendants were trespassing thereon, cutting timber for the purpose of removing the same, and would remove the same unless prohibited by the process of the court."); *Farm Serv., Inc. v. U. S. Steel Corp.*, 90 Idaho 570, 590–91, 414 P.2d 898, 909–10 (1966) (reversing an order granting a preliminary injunction under Idaho Code section 8-402 ("Injunctions") (repealed by Idaho S.L. 1975, ch. 242, § 1 when I.R.C.P. 65(e) was adopted) because the plaintiff did not show both "irreparable injury" and that "it would likely prevail" at trial).

Even after we adopted Rule 65(e)(1) and (2), we have continued to apply the conjunctive standard articulated in *Evans*. *See, e.g.*, *Harris v. Cassia Cnty.*, 106 Idaho 513, 518, 681 P.2d 988, 993 (1984); *Idaho Cnty. Prop. Owners Ass'n, Inc. v. Syringa Gen. Hosp. Dist.*, 119 Idaho 309, 315, 805 P.2d 1233, 1239 (1991); *Brady v. City of Homedale*, 130 Idaho 569, 572, 944 P.2d 704, 707 (1997). We articulated the conjunctive standard just six months ago in *Munden v. Bannock*

7

*Cnty.*, 169 Idaho 818, 829, 504 P.3d 354, 365 (2022) (quoting subsections (1) and (2) of Rule 65(e) as "articulat[ing] the grounds for a preliminary injunction" while reiterating that preliminary relief "is granted only in extreme cases where the right is very clear and it appears that irreparable injury will flow from its refusal." (internal quotations omitted)).

Our Court is not alone in applying a conjunctive standard for preliminary relief. In the federal system, a preliminary injunction will only issue when the requesting party can show, among other factors, "that he is likely to succeed on the merits" and "that he is likely to suffer irreparable harm in the absence of preliminary relief[.]" *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011).

Many of our sister states also agree with this conjunctive standard. *See, e.g.*, *Glen Ellyn Sav. & Loan Ass'n v. Tsoumas*, 354 N.E.2d 53, 55 (Ill. App. 1976) ("[T]o support a preliminary injunction, plaintiffs must establish both irreparable injury and likelihood of success on the merits."); *MetroHealth Sys. v. Khandelwal*, 183 N.E.3d 590, 595 (Ct. App. Ohio 2022) (same); *Eastman Kodak Co. v. Carmosino*, 77 A.D.3d 1434, 1435 (N.Y. App. Div. 2010) (same); *Ingraham v. Univ. of Maine at Orono*, 441 A.2d 691, 693 (Me. 1982) (same); *but see Porter v. K & S P'ship*, 627 P.2d 836, 839 (Mont. 1981) (applying a more lenient standard where if "either showing is made" then courts are "inclined" to issue preliminary relief).

And, there is wisdom in examining the likelihood of success or the clear rights of a party before a preliminary injunction issues. Beyond the confines of this case, it is easy to foresee the injustices that might result from a rule of law that would enable a party to enjoin the sale of real property without first demonstrating that the party holds a right of first refusal. Even more concerning is the reality that if a court improperly orders injunctive relief it is the *court* that inflicts irreparable injury for which there can be no redress. *Bonaparte*, 3 F. Cas. at 827 ("[F]or if it issues erroneously, an irreparable injury is inflicted, for which there can be no redress, it being the act of a court, not of the party who prays for it.").

Finally, while the dissent makes the case that the plain meaning of Rule 65(e) is inconsistent with its application under Idaho caselaw, the principle of stare decisis demands that this Court adhere to the conjunctive standard we have articulated and applied for the last 130 years. *See Evans*, 47 Idaho at 270; *Harris*, 106 Idaho at 518. Our stare decisis rule is clear: "[w]hen there is controlling precedent on questions of Idaho law 'the rule of stare decisis dictates that we follow

8

it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice.'" *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 592, 130 P.3d 1127, 1130 (2006) (quoting *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990)). None of the justifications to break stare decisis apply here. In short, stare decisis "provides that today's Court should stand by yesterday's decisions." *Kimble v. Marvel Ent., LLC*, 576 U.S. 446 (2015). To grant preliminary injunctive relief without applying a conjunctive standard would transform an extraordinary form of relief into an ordinary remedy.

Turning back to this case, even if Petitioners have carried their burden of demonstrating that irreparable harm will flow from immediate enforcement of the Total Abortion Ban, this alone cannot permit the extraordinary remedy Petitioners seek. As explained above, for preliminary relief to issue, Petitioners must demonstrate a *substantial* likelihood of success on the merits or a "clear right" to the ultimate relief requested. In the post-*Dobbs* landscape, Petitioners cannot meet this burden and as such, are not entitled to the drastic relief they pursue. As noted in our June 30, 2022 order, the United States Supreme Court's decision in *Dobbs* has "altered the landscape" of long-standing federal constitutional law. In *Dobbs*, the Supreme Court held that the United States Constitution does not explicitly or implicitly contain a right to abortion and returned the "profound moral question" of abortion to the "people and their elected representatives":

> We hold that [*Roe v. Wade*, 410 U.S. 113 (1973)] and [*Planned Parenthood v. Casey*, 505 U.S. 833 (1992)] must be overruled. The Constitution makes no reference to abortion, and no such right is implicitly protected by any constitutional provision, including the one on which the defenders of *Roe* and *Casey* now chiefly rely—the Due Process Clause of the Fourteenth Amendment. That provision has been held to guarantee some rights that are not mentioned in the Constitution, but any such right must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (internal quotation marks omitted).
>
> The right to abortion does not fall within this category. Until the latter part of the 20th century, such a right was entirely unknown in American law. Indeed, when the Fourteenth Amendment was adopted, three quarters of the States made abortion a crime at all stages of pregnancy.
>
> [. . . .]
>
> Abortion presents a profound moral question. The Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion. *Roe* and *Casey*

9

arrogated that authority. We now overrule those decisions and return that authority to the people and their elected representatives.

142 S. Ct. at 2242–43, 2284.

In light of this, Petitioners have presented this Court with a "new" case that does not come within "well-established principles." Moreover, what Petitioners are asking this Court to ultimately do is to declare a right to abortion under the Idaho Constitution when—on its face—there is none. In fact, before *Roe* announced a federal constitutional right to abortion in 1973, abortion had been a long-standing criminal offense in Idaho. *See* Idaho Rev. Stat. §§ 6794, 6795 (1887), *recodified at* Idaho Comp. Stat. §§ 17-1810, 17-1811 (1932), *recodified at* I.C. §§ 18-601, 18-602 (1948), *repealed after* Roe *by an* Act of March 17, 1973, ch. 197, § 2, 1973 Idaho S.L. 443. Indeed, abortion had been a crime in Idaho since its early territorial days and for approximately 26 years before Idaho adopted its constitution in 1890. *See* Act of Feb. 4, 1864, ch. IV, § 42, 1863-64 Idaho (Terr.) Laws 443, *repealed and reenacted by* Act of Dec. 21, 1864, ch. III, Pt. IV, § 42, 1864 Idaho (Terr.) Laws 305, *reenacted by* Act of Jan. 14, 1875, ch. IV, § 42, 1874 Idaho (Terr.) Laws 328.

Petitioners offer numerous reasons why such a right should nevertheless be *read into* one, some, or a combination of certain sections in Article I of the Idaho Constitution. However, this is exactly why Petitioners cannot meet their burden to show a substantial likelihood of success on the merits or a "clear right" to the relief request. Petitioners' legal theories present "complex issues of law" for this Court to resolve, the outcome of which is neither clear nor free from doubt. *See Harris*, 106 Idaho at 518, 681 P.2d at 993 (alteration added) (explaining that a party requesting preliminary relief cannot show a "substantial likelihood of success" where "[. . .] complex issues of law or fact exist which are not free from doubt."). In short, given the legal history of abortion in Idaho, we cannot simply infer such a right exists absent *Roe* without breaking new legal ground, which should only occur after the matter is finally submitted on the merits.

Petitioners' remaining claims suffer from the same legal complexity impediment. For example, in their constitutional vagueness challenge, Petitioners have raised serious issues with the lack of clarity in the affirmative defense provisions as they relate to criminal prosecution and the impact it will have on medical providers and women seeking medical treatment for conditions such as ectopic pregnancies and preeclampsia. However, both sides have articulated colorable interpretations of the Total Abortion Ban, and we cannot conclude at this time that Petitioners' constitutional vagueness challenge is free from doubt, especially in light of our rule of construction that "whenever possible, a statute should be construed so as to avoid a conflict with the state or

federal constitution." *State v. Gomez-Alas*, 167 Idaho 857, 866, 477 P.3d 911, 920 (2020). Petitioners' likelihood of success on their other claims suffers from the same impediment. To grant a stay in this case would ignore the weight of injunctive relief and simplify an entire legal standard given the obstacles Petitioners haven't overcome for their arguments.

Thus, because Petitioners have not carried their burden to show a likelihood of success or a clear legal right on any of their claims so that preliminary relief could issue, Petitioners' request for a stay of enforcement of the Total Abortion Ban pending resolution of this case is denied.

**B. The Court's April 8, 2022 Order Staying Enforcement of the Civil Liability Law is Vacated.**

We also instructed the parties to address whether the Court should continue to stay the enforcement of S.B. 1309. Petitioners argue that grounds still exist to justify continuing the preliminary stay, while the State and Intervenors maintain that it should be ended immediately. We again conclude that Petitioners have failed to establish a *substantial* likelihood of success on the merits or a "clear right" to relief on any of their claims and, therefore, have failed to carry their burden to demonstrate that we should continue to stay the enforcement of S.B. 1309.

The primary claim asserted in Petitioners' challenge to S.B. 1309 is that it violates the separation of powers doctrine enshrined in Article II, section 1, of the Idaho Constitution. That doctrine, among other things, prohibits one branch of government (e.g., the legislative) from "exercis[ing] [the] powers properly belonging to" another branch of government (e.g., the executive). Idaho Const. art. II, § 1. Distilled to its essence, Petitioners contend the Civil Liability Law "attempts to deputize private citizens to do what fifty years of precedent has reaffirmed a State itself may not—enforce a pre-viability ban on abortion." Pet'r Brief in Support, p. 18 (Dkt. No. 49615).

To explain further, when the legislature passed the Civil Liability Law, its private cause of action against abortion providers took immediate effect—but its criminal provision remained dormant and unenforceable. Petitioners contend the legislature was attempting to ensure a law of Idaho was faithfully executed—through indirect and private enforcement—in an area the executive branch could not regulate under *Roe v. Wade,*. 410 U.S. 113 (1973). However, the "supreme executive power of the state" is vested in the governor and the executive branch agencies to "see that the laws are faithfully executed." Idaho Const. art. IV, § 5; *Emps. Res. Mgmt. Co. v. Kealey*, 166 Idaho 449, 452, 461 P.3d 731, 734 (2020). It is not vested in the legislature, nor is it vested in

11

private citizens, deputized to execute Idaho's laws to the exclusion of executive actors. *See* Idaho Const. art. IV, § 5; *Kealey*, 166 Idaho at 452, 461 P.3d at 734 ("[E]ach governmental branch has distinct powers that cannot be delegated to another[.]").

At the time of its filing, there was a substantial likelihood that Petitioners' challenge to the Civil Liability Law could succeed on the merits. The legislature's enactment of the Civil Liability Law occurred only months after a Texas District Court had declared a similar, but more expansive, private enforcement law ("SB 8") to be "an unconstitutional delegation of enforcement power" by the Texas Legislature "to private persons":

> *SB 8 is an unguided and unsupervised delegation of enforcement power to private persons*. Delegation to an *agency* or to *public officials* is of course a different matter and is common in the well-developed field of administrative law, with many precedents concerning delegation of *rulemaking, adjudication, and enforcement* to agencies. But *agencies* are staffed at the top by appointed officials, and the statute that creates them must provide sufficient guidance to them, narrow their discretion, and provide for review. Agency decisions are subject to judicial review by traditional courts with their full powers. *None of this can be said about SB 8's delegation to private persons.*

*Van Stean v. Texas Right to Life*, No. D-1-GN-21-004179, at \*43–44 (98th Jud. Dist. Ct. Dec. 9, 2021) (emphasis original) (applying an eight-factor test to declare that SB 8's delegation of executive enforcement power to private persons violates the Texas Constitution).

The force of Petitioner's separation of powers argument, however, essentially hinged on one fact—the criminal liability provision remained dormant while the civil enforcement law was allowed to take effect. The criminal liability provision, however, is no longer dormant. There is no dispute that the criminal liability provision was triggered on July 20, 2022, when the United States Court of Appeals for the Eleventh Circuit upheld a Georgia law prohibiting abortions after a detectable human heartbeat. *See SisterSong Women of Color Reprod. Just. Collective v. Governor of Ga.*, __ F.4th __, 2022 WL 2824904 (11th Cir. July 20, 2022). As of August 19, 2022, the State *will* be able to criminally enforce the Heartbeat Act's prohibition on abortions and, in turn, carry out its duty to ensure the laws of Idaho are faithfully executed. *See* I.C. § 18-8805(1). Because the state now has the power to criminally enforce the Act's prohibition, it is no longer *substantially* likely, or clear, that Petitioners are entitled to a declaration that the Civil Liability Law violates the separation of powers doctrine under the Idaho Constitution.

During the August 3 hearing, Petitioners focused much of their argument on their vagueness challenge to S.B. 1309 and the Total Abortion Ban. Again, as we explained above,

12

while Petitioners have raised serious concerns about the lack of clarity in these provisions, both sides have given colorable interpretations of these statutes. However, this Court does not take the requirements for injunctive relief lightly. Given the significance of this specific remedy, the burden on the parties to meet the standard is high and Petitioners have not met this burden. Because there are complex legal questions which must be answered, Petitioners have not demonstrated a substantial likelihood of success on the merits or a clear right to relief, which is necessary to establish an entitlement to preliminary relief. *See Harris*, 106 Idaho at 518, 681 P.2d at 993. Petitioners' other challenges to S.B. 1309 suffer from the same legal complexity impediment.

In sum, in the post-*Dobbs* legal landscape, Petitioners cannot establish a substantial likelihood of success on the merits or a "very clear" right that will be irreparably injured if the preliminary stay against implementing S.B. 1309 is vacated.

### III.    CONCLUSION

A separate order carrying out the Court's opinion will issue.

Chief Justice BEVAN and Justice MOELLER CONCUR.

STEGNER, J., concurring in part and dissenting in part.

I fully concur with the majority's decisions to consolidate all three of these cases and to decline to remand the matters to district court. I also concur in the majority's decision to expedite briefing on the two most recently filed cases so the Court can hear arguments on all three cases on September 29, 2022. However, I respectfully dissent from the majority's decisions to not grant a stay of enforcement of Idaho Code section 18-622 (the Total Abortion Ban) and to vacate the order staying the enforcement of Senate Bill 1309 (the Civil Liability Law). Further, I would stay the enforcement of Idaho Code section 18-8804 (the Fetal Heartbeat Ban).

I begin by noting that never in our nation's history has a fundamental right once granted to her citizens been revoked. For almost half a century, the people of Idaho who performed or obtained abortions were protected by the recognized federal fundamental right of the woman involved in the procedure to exercise her right to bodily autonomy and health to terminate the pregnancy. The rescinding of a previously recognized fundamental right by the United States Supreme Court in *Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228 (2022), has created significant societal upheaval, as should be evident to even the casual observer of American society.

We—both Idaho's citizens and this Court— now find ourselves in uncharted legal waters, waters we should navigate with great caution and care. The legal questions before this Court are "not only unusual, but unprecedented." *Whole Woman's Health v. Jackson*, 141 S.Ct. 2494, 2496 (2022) (Roberts, C.J., dissenting from denial of stay in a case challenging a Texas statute similar to Idaho's Civil Liability Law). I agree with Chief Justice Roberts' viewpoint: "the consequences of approving the state action, both in this particular case and as a model for action in other areas, counsel at least preliminary judicial consideration before the program devised by the State takes effect." *Id.* If ever there was time for circumspection, it is now.

Aside from the value I see in circumspection when considering how this sea change in the law will affect Idaho's citizens, I also believe the majority's decision to not stay two of the laws and to lift the stay on another is not supported by Rule 65(e). I do not believe the majority's decision today clarifies the rule, but instead amends the rule by inserting the word "and" between subsections (1) and (2) when it has never been there previously.

It may be true that the common law of other states required a party seeking injunctive relief to demonstrate both (1) an entitlement to the relief requested, and (2) that absent an injunction, irreparable injury either would occur or was likely to occur. Idaho's statutes and rules, however, have consistently identified the two elements as *separate* bases for relief.

At the time of statehood, the Idaho Rules of Civil Procedure did not exist. Instead, the Idaho territorial statutes described when injunctive relief could be granted. In 1890, section 4288 of the Revised Statutes of the Idaho Territory described when injunctive relief could be granted:

Sec. 4288. An injunction may be granted in the following cases:

1. When it appears by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;

2. When it appears by the complaint, or affidavit, that the commission or continuance of some act during the litigation would produce waste, great or irreparable injury to the plaintiff;

3 When it appears during the litigation that the defendant is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights, respecting the subject of the action, and tendency to render the judgment ineffectual;

14

4. When it appears, by affidavit, that the defendant during the pendency of the action, threatens, or is about to remove, or to dispose of his property with intent to defraud the plaintiff, an injunction order may be granted to restrain the removal or disposition;

5. An injunction may also be granted on the motion of the defendant upon filing a cross complaint, praying for affirmative relief upon any of the grounds mentioned above in this section, subject to the same rules and provisions provided for in the issuance of the injunctions on behalf of the plaintiff;

Section 4288, Rev. St. Idaho Terr. (1887). The requirements identified in subparts 1-5 above remained in statute, in substantially the same form, until the Idaho Supreme Court promulgated Idaho Rule of Civil Procedure 65 in 1974. From 1974 until today, Rule 65(e) has contained substantially the same requirements for injunctive relief as existed at the time of statehood.

Throughout Idaho's history, whether in statute or in rule, Rule 65(e) (or its precursor) has provided a list of scenarios, any one of which is sufficient on its own, to justify the issuance of injunctive relief. I.R.C.P. 65(e)(5). The plain language of Rule 65 supports this interpretation: "A preliminary injunction may be granted . . . upon *any* of the grounds mentioned in this section . . . ." *Id.* (italics added). In 2014, in an article in *The Advocate,* the official publication of the Idaho State Bar, Dean Bennett and Brian Wonderlich aptly noted that, "[a]lthough Rule 65(e) is framed in the disjunctive, courts applying the Rule regularly state the common law standard which is framed in the conjunctive[.] . . . As one might expect, courts' continued reliance on the common law has created confusion and inconsistency in how Rule 65(e) is applied." *See* A. Dean Bennett & Brian C. Wonderlich, *Idaho's Rule 65(e) - Lenient Standard for an Extraordinary Remedy*, 57 ADVOCATE 27 (2014). Bennett and Wonderlich's article alerted this Court to the confusion that has resulted in Idaho courts regarding when a preliminary injunction could issue. This Court has had several intervening years to address this confusion by the proper procedures, and it has not done so. Their article shows that stare decisis, while potentially offering guidance on the application of the rule, does not support the view that subsections (1) and (2) of Rule 65(e) operate conjunctively.

Further, it is doubtful that the cases the majority relies upon even constitute stare decisis on this issue. The doubt arises from the fact that none of the cases directly addressed whether the first two subsections should be read in the conjunctive or the disjunctive. *Gilpin v. Sierra Nevada Consol. Min. Co.*, 2 Idaho 696, 703, 23 P. 547, 549 (1890) (inserting the word "and" between quotations of subsections (1) and (2) of section 4288, Rev. St. Idaho without explanation); *Staples*

15

*v. Rossi*, 7 Idaho 618, 626–27, 65 P. 67, 69 (1901) (holding Plaintiff entitled to a preliminary injunction without addressing if the first two subsections of section 4288, Rev. St. Idaho were conjunctive or disjunctive); *Evans v. Dist. Ct. of Fifth Jud. Dist.*, 47 Idaho 267, 270, 275 P. 99, 100 (1929) (citing California case law and failing to address Idaho statute concerning injunctive relief); *Farm Serv., Inc. v. U. S. Steel Corp.*, 90 Idaho 570, 590–91, 414 P.2d 898, 909–10 (1966) (citing *Evans* for the rule without addressing interpretation of Idaho statute); *Harris v. Cassia Cnty.*, 106 Idaho 513, 518, 681 P.2d 988, 993 (1984) (citing *Evans* and *Farm Service, Inc.* without interpreting Rule 65(e)); *Idaho Cnty. Prop. Owners Ass'n, Inc. v. Syringa Gen. Hosp. Dist.*, 119 Idaho 309, 315, 805 P.2d 1233, 1239 (1991) (citing *Evans* and *Farm Service, Inc.* without interpreting Rule 65(e)); *Brady v. City of Homedale*, 130 Idaho 569, 572, 944 P.2d 704, 707 (1997) (citing *Harris* and *Evans* without interpreting Rule 65(e); *Munden v. Bannock Cnty.*, 169 Idaho 818, 829, 504 P.3d 354, 365 (2022) (citing *Brady* without interpreting Rule 65(e)).

A review of these cases reveals that this Court has not previously examined or decided whether the first two subsections should be read with an "and" instead of an "or." Instead, the Court either inserted the word "and" without explanation (*Gilpin*), cited *Gilpin*, without articulating whether it required both subsections (*Staples*), or relied on California law (*Evans*). The remaining cases perpetuate the California rule from *Evans*. None of these grappled with the issue at hand—how to interpret Idaho's law and rule. As a result, there is no controlling precedent to establish that the Rule's plain language should be ignored in favor of inserting the word "and" between the first two subsections.

Today the majority jettisons this history, declaring it an "inconsistency" with "our traditional requirements for preliminary relief" and reads Rule 65(e)(1) and (e)(2) as conjunctive, requiring both subsections (1) (the clear right to relief) and (2) (irreparable injury) to be shown before a court may issue a preliminary injunction. In my view, the majority misreads the plain text of Rule 65(e) and ignores the fact that the language of the statute and rule have remained essentially the same since before statehood. The Rule says "any" of the enumerated bases may suffice for the issuance of an injunction.

In concluding that subsections (1) and (2) must be read conjunctively, the majority ignores Rule 65(e)'s remaining subsections:

> (3) when it appears during the litigation that the defendant is doing, threatening, procuring or allowing to be done, or is about to do, some act in violation of the

plaintiff's rights, respecting the subject of the action, and the action may make the requested judgment ineffectual;

(4) when it appears, by affidavit, that the defendant is about to remove or to dispose of the defendant's property with intent to defraud the plaintiff;

(5) for the defendant upon filing of a counterclaim praying for affirmative relief upon any of the grounds mentioned above in this section, subject to the same rules and provisions provided for the issuance of injunctions on behalf of the plaintiff;

If both (1) and (2) must be demonstrated by Petitioners to secure preliminary relief, then why not (3) and (4) as well? If the rule truly is conjunctive, then it must either be so in full or not at all. The majority makes no mention of how subsections (3) and (4) interact with subsections (1) and (2). As noted, the text of the rule states that a preliminary injunction may be issued upon "*any*" of the grounds listed in the rule.

There may well be grounds to amend Rule 65 and to require parties to establish both subsection (1) and (2) to demonstrate a right to injunctive relief. But that is not a decision that should be made without further research, comment, and consideration. In the past, this Court has approached rule changes by first referring the issue to the applicable Idaho Supreme Court committee. That committee then meets to study and consider the issue before making a recommendation to the Court. If the Court has concerns that Rule 65 should be revised, I see no reason to deviate from that process to essentially amend Rule 65 in its decision today. Further, by relying on the Petitioners' acquiescence to an argument, the majority is essentially allowing litigants to control our jurisprudence. I first note that Petitioners cited no law in support of their assertion that they demonstrated both a serious violation of their constitutional rights and a likelihood of success on the claims. It is unclear from Petitioners' briefing whether they were conceding they had to establish both grounds to be entitled to relief, or simply asserting that they established a right to relief on both grounds. However, even if Petitioners were conceding that they needed to show both elements to be entitled to relief, it behooves this Court to determine what the law is and then how it is to be applied. By the majority's action today, we will have amended a rule of procedure without having considered whether doing so is correct. Rather, it will be determined by what the litigants argued. I find this determination antithetical to our responsibility to determine the law going forward.

I also note that the majority has cited to both federal law and law from other states to support its decision. First, the majority cites *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), to explain that Petitioners must establish the existence of a clear right to

recover *and* irreparable injury. However, Idaho's procedure is much different than that at issue in *Winter*.

Simply put, this case involves the application of Idaho law to a uniquely Idaho question. It is manifestly incorrect to apply federal law and precedent under the facts of this case. Additionally, the majority cites case law from Illinois, Ohio, New York, and Maine to support its conjunctive reading of 65(e). In my view, how other states have interpreted their respective procedural rules is irrelevant given that their rules are not analogous to Idaho's.[1] Here, it is especially important to apply Idaho law, as opposed to federal law or law from other states that are not comparable to Idaho when analyzing how Idaho's law should be applied.

Pursuant to Rule 65(e)(2), a stay is warranted when the plaintiff would suffer "great or irreparable injury" without a stay being entered. I.R.C.P. 65(e)(2). Here, there is a substantial risk of irreparable injury without a stay. If the Petitioners are correct in their interpretation of the Idaho constitution and we do not stay the implementation and enforcement of the statutes, we run the serious risk of depriving women of their fundamental rights. This infringement on a (potential) fundamental right would therefore cause irreparable injury, injury that may be readily avoided if we were to issue a stay. If the Petitioners' interpretation is correct, the irreparable harm caused to women by declining to stay the enforcement of the statutes would be of constitutional proportions: they would be irreparably denied their chance to exercise a fundamental right. In my opinion, the potential constitutional harm readily warrants a stay here.

A preliminary stay is an extreme remedy and should not be issued lightly. These cases now before us, however, are significant, both in terms of historical context and potential irreparable injury. In reaching this decision today, I am also mindful of the State's argument that it is entitled to implement its duly enacted laws. However, I also note that a stay would only be of brief duration, given the Court's decision to expedite the briefing on the remaining petitions and to schedule oral argument for September 29. This schedule allows us to decide this issue quickly, while taking the time for all parties to properly brief and present their respective arguments.

---

[1] Notably, the Montana Supreme Court recently answered the same question now before us. *See Planned Parenthood of Montana v. State by & through Knudsen*, 2022 WL 3209766 (Mont. Aug. 8, 2022). The court concluded that its preliminary injunction requirements, which are remarkably similar to our Rule 65(e), operated disjunctively. *See id.* at *2; *see also* Mont. Code Ann. § 27-19-201 (2022).

No one seriously disputes that the Petitioners have established a showing of irreparable harm if a stay is not granted. That is all that is required under Idaho's rules of procedure. The State and the Legislature's only argument that irreparable harm will not result is that the Idaho Constitution does not protect the right to an abortion. This argument fails because it is premised on a decision we have not yet made. Staying the enforcement of section 18-622, section 18-8804, and Senate Bill 1309 would preserve the status quo that has been in effect for nearly fifty years and allow the parties the opportunity to craft their arguments and for us to consider the merits of these cases with the care and attention they deserve. *See Whole Woman's Health*, 141 S.Ct. 2496 (Roberts, C.J., dissenting from denial of stay) ("I would grant preliminary relief to preserve the status quo ante—before the law went into effect—so that the courts may consider whether a state can avoid responsibility for its laws in such a manner [similar to the Civil Liability Law]."). Therefore, I respectfully dissent from the majority's decision to deny the staying of these various statutes while they are pending before this Court.

Justice ZAHN CONCURS.