## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 49936

|  |  |  |
|---|---|---|
| INSURE IDAHO, LLC, an Idaho limited liability company, | ) ) ) | |
| Plaintiff-Respondent-Cross Appellant-Cross Respondent, | ) ) ) | **Boise, April 2025 Term** |
| v. | ) ) | **Opinion filed: July 11, 2025** |
| CLAUDIA HORN, an individual, | ) ) | **Melanie Gagnepain, Clerk** |
| Defendant-Appellant-Cross Respondent, | ) ) ) | |
| and | ) ) | |
| HENRY INSURANCE AGENCY, LLC, an Idaho limited liability company dba INTEGRITY INSURANCE AGENCY, | ) ) ) ) | |
| Defendant-Cross Respondent-Cross Appellant. | ) ) ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Lynn G. Norton, District Judge.

The district court's judgment of contempt is <u>reversed</u>, the order granting a preliminary injunction is <u>vacated</u>, and the case is <u>remanded</u> for further proceedings.

Garrett Richardson, Eagle, for Appellant/Cross Respondent Claudia Horn. Brad Richardson argued.

Givens Pursley LLP, Boise, for Respondent/Cross Appellant/Cross Respondent Insure Idaho, LLC. Amber N. Dina argued.

Holland & Hart, LLP, Boise, for Cross Appellant/Cross Respondent Henry Insurance Agency, LLC. Jennifer M. Jensen argued.

---

MOELLER, Justice.

This case concerns a non-solicitation agreement and the legal proceedings that were instituted to enforce it. Claudia Horn worked for her employer, Insure Idaho, LLC, for over six years. During her employment, she signed a non-solicitation agreement (the "Agreement" or "Non-Solicitation Agreement"), which prohibited her from directly or indirectly soliciting Insure

Idaho customers for the benefit of herself or another company. Horn later left Insure Idaho to work for a competitor, Henry Insurance Agency, LLC, dba Integrity Insurance Agency ("Henry Insurance"). After she left, several Insure Idaho customers opted to follow Horn with their business. Insure Idaho sought a preliminary injunction enjoining Horn and Henry Insurance from soliciting its customers, which the district court granted. After another former Insure Idaho customer moved its business to Henry Insurance, the district court found Horn, but not Henry Insurance, in contempt of court for violating the preliminary injunction. After Horn appealed the judgment of contempt, Henry Insurance and Insure Idaho cross-appealed.

This case requires us to determine whether the district court: (1) followed proper procedure in conducting the contempt hearing and holding Horn in contempt, (2) employed the correct standard for granting a preliminary injunction, and (3) applied the correct meaning of the word "solicit," as used in the Non-Solicitation Agreement, when it concluded that Horn was in contempt of court. For the reasons explained below, we reverse the order granting a preliminary injunction, vacate the judgment of contempt, and remand for further proceedings.

## I.    STATEMENT OF FACTS

Horn began working for Insure Idaho as a receptionist in February 2015. With the help of Insure Idaho, she obtained a property and casualty insurance license, which allowed her to sell insurance. In August 2016, Horn signed the Non-Solicitation Agreement, which provided that:

> During the Employee's employment by the Company and for a period of eighteen (18) months thereafter, Employee shall not, either directly or indirectly, for himself or herself or on behalf of or in conjunction with any other person, company, partnership, corporation, business, group, or other entity:
>
> . . . .
>
> > (b) Solicit or attempt to solicit any Business of the Company from any person, company, partnership, corporation, business group or other entity who, as of the date of the solicitation or attempted solicitation or within thirteen (13) months prior to that date, is or was a customer of the Company, or an actively sought prospective customer of the Company.

Despite being titled as a "non-competition and non-solicitation agreement," the Agreement only restricted Horn's ability to solicit business from Insure Idaho's customers; it contained no provisions purporting to restrict Horn's ability to compete with Insure Idaho.

In July 2021, Horn resigned from her position with Insure Idaho. At that time, she was an at-will employee earning approximately $17.40 per hour. Upon leaving Insure Idaho, Horn deleted all contacts in her phone from Insure Idaho clients (except that of a friend, who happened to be a

client), and did not retain any client lists upon her departure. Horn was subsequently hired by Henry Insurance as an account manager. In this new position, she no longer worked as a salesperson; instead, she assisted Henry Insurance's existing clients. Horn provided Henry Insurance with a copy of the Non-Solicitation Agreement before she started working for the company.

Shortly after commencing her job with Henry Insurance, current and former customers of Insure Idaho began contacting Horn for various reasons relating to their insurance needs. Some of these clients were unaware that Horn was no longer employed by Insure Idaho and were inquiring about their existing policies with Insure Idaho. In those instances, Horn testified that she directed the customers back to Insure Idaho for assistance. Other customers were aware that she had left Insure Idaho and sought to do business with her at Henry Insurance. Some of these customers spoke Spanish and liked working with Horn, as she also spoke Spanish fluently. Out of concern for complying with the Non-Solicitation Agreement, Horn and Henry Insurance consulted with legal counsel and developed a protocol for Insure Idaho customers who wished to follow Horn to Henry Insurance. Under this system, Horn would not initiate contact with any Insure Idaho clients. For those who contacted her wishing to follow her to Henry Insurance, Horn would instruct them to call her office line "so all communications and notes would be documented in . . . the software used by Henry Insurance for client files."

In September 2021, Insure Idaho learned that six of its current or past customers had taken their business to Henry Insurance, with Horn assisting them in making the switch. These customers were: A&H Framing, FDJ Construction, BMN Construction, RD Framing, J&A Drywall, and Ariel's Taping. In each instance, the customers initiated the contact and sought to do business with Horn and Henry Insurance on their own accord. All the new customers were onboarded consistent with the protocol put in place by Horn and Henry Insurance. After it became aware that it was losing customers, Insure Idaho sent a letter to Horn demanding that she cease soliciting Insure Idaho customers.

The following month, Insure Idaho filed a complaint in the district court and requested that a preliminary injunction be entered to prevent Horn and Henry Insurance from soliciting, or attempting to solicit, any Insure Idaho customers. At Insure Idaho's request, the court issued an order requiring Horn and Henry Insurance to appear and show cause why a temporary restraining order should not be issued. At the conclusion of the show cause hearing, the district court entered

a temporary restraining order on December 1, 2021. After further briefing, the district court granted the preliminary injunction on December 14, 2021, "enjoining Defendant Claudia Horn from directly or indirectly soliciting Insure Idaho customers for a period of thirteen months[.]" The district court also required Horn to preserve evidence of her phone communications. Finally, the district court also enjoined both Horn and Henry Insurance from "soliciting or attempting to solicit any [further] insurance product" from FDJ Construction, BMN Construction, RD Framing, J&A Drywall, and Ariel's Taping, other than the policies that had already been transferred from Insure Idaho to Henry Insurance.[1]

Prior to the issuance of the preliminary injunction, another former Insure Idaho customer, HF Construction, had transferred its general liability and worker's compensation policies from Insure Idaho to Henry Insurance. However, HF Construction retained its commercial auto policy with Insure Idaho. In December 2021, around the time the complaint was filed in the district court, Hugo Fernandez (the owner of HF Construction) began reaching out to Horn seeking to transfer the commercial auto policy to Henry Insurance. Fernandez repeatedly expressed that he no longer wanted to keep his insurance with Insure Idaho. Horn and Henry Insurance informed Fernandez that, out of concern for complying with the recently issued preliminary injunction, they could not write him an insurance policy.

Fernandez again reached out to Horn in early January 2022 about transferring his commercial auto policy to Henry Insurance. He also asked for information about his existing policies with Henry Insurance, again indicating his interest in having all his policies with one agency. Horn understood this as a sign that Fernandez might move all his insurance policies to a different agency if Henry Insurance was not able to obtain a commercial auto policy on his behalf. Horn then discussed the situation with her supervisor at Henry Insurance. After consulting legal counsel, they determined they could write a commercial auto policy for HF Construction without violating the preliminary injunction. However, before Henry Insurance could act on this advice, HF Construction cancelled its auto policy with Insure Idaho on January 6, 2022, and obtained a new auto policy with Financial Insurance Group Inc. ("FIG"), an unrelated insurance agency.

Subsequently, on January 25, 2022, Fernandez called Horn again about HF Construction's existing policies with Henry Insurance. He asked Horn to help him ensure that his policies met the requirements for a job with Boise Home Hunters ("BHH"). Horn responded by opening a line of

---

[1] The court omitted A&H Framing from the injunction due to a lack of evidence presented by Insure Idaho.

communication with Fernandez through Henry Insurance's software so that Fernandez could send her information related to the policies. Horn also sent BHH the information it needed about Fernandez's policies. BHH advised that Fernandez needed to increase his general liability and auto policy limits. Horn also discovered that BHH required an umbrella policy, which Fernandez did not currently hold. At Fernandez's request, Horn reviewed Fernandez's policy with FIG. She advised him that his coverage needed to be increased and that he needed to add an umbrella policy. Fernandez then requested that Horn handle all his insurance needs to assist him in doing business with BHH and asked her to cancel his insurance with FIG. Horn and Henry Insurance agreed to write the required policies, and helped him cancel his existing policy with FIG. In a subsequent affidavit, Fernandez stated that he sought out Horn and Henry Insurance on his own, and that they did nothing to solicit his business.

Insure Idaho became aware of these events after BHH accidentally sent an email to Horn's old email address with Insure Idaho. Insure Idaho then filed a motion for contempt, alleging that Horn and Henry Insurance had violated the preliminary injunction by soliciting HF Construction's business. At the time of the motion, Horn and Henry Insurance were represented by the same attorney; subsequently, each obtained individual counsel.

The matter proceeded to trial on the contempt motion. After Insure Idaho had presented its case-in-chief, both Horn and Henry Insurance moved for a directed verdict, which the district court treated as a motion for involuntary dismissal of the contempt proceeding. The court granted the motion as to Henry Insurance, but denied it as to Horn. It also awarded Henry Insurance attorney fees. After Henry Insurance was dismissed from the proceeding, Horn proceeded with her defense. The district court ultimately found Horn in contempt for violating the preliminary injunction. However, the district court did not impose any sanction on Horn, nor did it award Insure Idaho attorney fees.

Horn timely appealed the district court's order of contempt and challenged the validity of the preliminary injunction. Insure Idaho cross-appealed the district court's decision to dismiss Henry Insurance from the contempt proceeding and challenged the court's award of attorney fees to Henry Insurance. Henry Insurance also cross-appealed, similarly challenging the validity of the preliminary injunction.

## II. STANDARDS OF REVIEW

"[T]his Court exercises free review over questions regarding the interpretation of the Idaho Rules of Civil Procedure," including the "proper procedure governing non-summary contempt proceedings under Idaho Rule of Civil Procedure 75." *Abell v. Abell*, 172 Idaho 531, 539, 534 P.3d 957, 965 (2023) (citation omitted). In reviewing the lower court's finding of contempt, this Court does not "weigh the evidence" but instead "review[s] the trial court's findings to determine if they are supported by substantial and competent evidence." *Carr v. Pridgen*, 157 Idaho 238, 242, 335 P.3d 578, 582 (2014) (citation omitted). When the legal conclusions supporting a judgment of contempt are challenged on appeal, "we review the contempt court's order de novo." *Snap! Mobile, Inc. v. Vertical Raise, LLC*, 173 Idaho 499, 514, 544 P.3d 714, 729 (2024) (citing *Rowley v. Ada Cnty. Highway Dist.*, 156 Idaho 275, 277, 322 P.3d 1008, 1010 (2014) ("We review a district court's conclusions of law de novo.")).

This Court reviews the decision to grant or deny a preliminary injunction for an abuse of discretion. *Miller v. Board of Trustees*, 132 Idaho 244, 245–46, 970 P.2d 512, 513–14 (1998). Under the abuse of discretion standard, this Court reviews "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). However, "where the preliminary injunction is based upon an erroneous conclusion of law," this Court may review that conclusion "independently of the issue of an abuse of discretion." *Id.* at 246, 970 P.2d at 514.

## III. ANALYSIS

### A. The district court erred in finding Horn in contempt of court.

The first issue presented in this case is whether the district court erred in finding Horn in contempt of court for violating the preliminary injunction. As noted above, in the weeks following the issuance of the preliminary injunction, Insure Idaho learned that "Horn had procured a commercial auto and umbrella policy for HF Construction on January 26, 2022." Up until three weeks beforehand, HF Construction had been an Insure Idaho customer; however, it had recently cancelled its auto policy with Insure Idaho. After learning of HF Construction moving to Henry Insurance, Insure Idaho filed a motion for contempt, alleging by affidavit that Horn and Henry Insurance had violated the preliminary injunction.

The district court held a "civil contempt" trial. Following Insure Idaho's presentation of its case, Horn and Henry Insurance moved for involuntary dismissal of the contempt motion. The district court denied the motion as to Horn, but granted it as to Henry Insurance. After Horn presented her defense, the district court found Horn in contempt but did not sanction her. On appeal, Horn alleges that the district court erred in holding her in contempt. On cross-appeal, Insure Idaho argues that the district court erred in dismissing Henry Insurance from the contempt proceedings.

> 1. *The district court erred in conducting a "civil contempt" trial despite having no legal authority to sanction Horn.*

Under Idaho law, contemptable behavior includes disobeying "any lawful judgment, order or process of the court." I.C. § 7-601(5). There are two types of contempt proceedings: (1) summary contempt proceedings, which are based on conduct that occurs in the presence of the presiding judge, and (2) non-summary contempt proceedings, which are based on conduct that occurs outside of the court's presence. I.R.C.P. 75(b), (c); *see* I.R.C.P. 75(a)(4), (5). As their titles suggest, summary contempt proceedings can occur immediately after the conduct is observed, while non-summary contempt proceedings require prior notice of the contempt charge and an opportunity to respond. I.R.C.P. 75(a)–(c). Idaho Rule of Civil Procedure 75 provides that "[a]ll contempt proceedings, except those initiated by a judge as provided above, must be commenced by a motion and affidavit. Contempt proceedings shall not be initiated by an order to show cause." I.R.C.P. 75(c)(2). Rule 75 further provides:

> The written charge of contempt or affidavit *must allege the specific facts constituting the alleged contempt and set forth each instance of alleged contempt separately*. The written charge or affidavit need not allege facts showing that the respondent's failure to comply with the court order was willful. If the alleged contempt is the violation of a court order, the written charge or affidavit must also allege that either respondent or the respondent's attorney was served with a copy of the court order or had actual knowledge of it.

I.R.C.P. 75(c)(3) (emphasis added).

Horn initially asserts that Insure Idaho's contempt affidavit did not comply with Rule 75(c)(3). Horn argues that Insure Idaho's motion for contempt and the accompanying affidavit failed to set forth "substantive and material facts demonstrating a willful violation" of the preliminary injunction. Horn accurately notes that, absent a sufficient affidavit in accordance with Rule 75(c), the court does not have jurisdiction to hold contempt proceedings. *See Muthersbaugh v. Neumann*, 133 Idaho 677, 679, 991 P.2d 865, 867 (Ct. App. 1999). The charging affidavit here

alleged that Horn solicited HF Construction's business by helping it obtain insurance with Henry Insurance on January 26, 2022. Despite Horn's contentions otherwise, the affidavit need not demonstrate that she willfully violated the preliminary injunction. *See* I.R.C.P. 75(c)(3) ("The . . . affidavit need not allege facts showing that the respondent's failure to comply with the court order was willful."). Moreover, the affidavit need not conclusively prove the allegations made—that is left for trial. Instead, the affidavit need only "allege the specific facts [that] constitute[ed] the alleged contempt[.]" *Id.* Here, we conclude that Insure Idaho's affidavit met that requirement.

Horn next alleges that the district court erred by conducting a "civil contempt" proceeding despite having no ability to impose a civil sanction. There are two categories of contempt: civil contempt and criminal contempt. *Camp v. E. Fork Ditch Co.*, 137 Idaho 850, 861, 55 P.3d 304, 315 (2002). Importantly, this distinction is dictated by the nature of the sanction ultimately imposed—either a civil sanction or a criminal sanction. *Id.* at 864, 55 P.3d at 318. The distinction between a civil and criminal sanction, in turn, is characterized by whether the sanction is "conditional" or "unconditional":

> The distinction between relief that is civil in nature and relief that is criminal in nature has been repeated and followed in many cases. An unconditional penalty is criminal in nature because it is "solely and exclusively punitive in character." A conditional penalty, by contrast, is civil because it is specifically designed to compel the doing of some act. "One who is fined, unless by a day certain he [does the act ordered], has it in his power to avoid any penalty. And those who are imprisoned until they obey the order, 'carry the keys of their prison in their own pockets.' "

*Id.* at 863, 55 P.3d at 317 (brackets in original) (internal citations omitted) (quoting *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 633 (1988)). Thus, "[a] penalty is unconditional if the contemnor cannot avoid any sanction by complying with the court order violated." *Id.* In contrast, "[a] penalty is conditional if the contemnor can avoid any sanction . . . by doing the act he had been previously ordered to do." *Id.* at 834, 55 P.3d at 318. Put another way, a penalty is civil if the "contemnor can avoid any sanction simply by performing the act he had been previously ordered to perform." *Id.* However, "[i]f the contempt involves doing what the court ordered the contemnor not to do, then under Idaho law the court can only impose a criminal contempt sanction—a determinate fine and/or a determinate jail sentence." *Id.* at 864–65, 55 P.3d at 318–19. This is because the "contemnor cannot go back in time and not do what he did. Once he has rung the bell, he cannot unring it." *Id.* at 865, 55 P.3d at 319 (footnote omitted).

The civil/criminal distinction is critical because criminal sanctions cannot be imposed absent constitutional safeguards. *Id.* at 860–61, 55 P.3d at 314–15. These safeguards include, but are not limited to, the following: the presumption of innocence; a right to compulsory process and the right to confront witnesses; the privilege from self-incrimination; the requirement that contempt be proven beyond a reasonable doubt; the right to call witnesses; the right to counsel; the right to a public trial; and the right to advance notice that a criminal penalty may be imposed. *Id.* These constitutional guarantees, coupled with the notion that the nature of the contempt proceeding is ultimately dictated by the sanction imposed, logically results in certain consequences. For example, if the contempt consisted of doing something the court had forbidden (and, thus, is limited to a criminal sanction), then the court must be careful to afford the defendant all the constitutional safeguards to which she is entitled; otherwise, no sanction may be imposed. *Id.* at 864, 55 P.3d at 318. Conversely, if the contemnor can avoid a sanction by doing the thing she had been previously ordered to do, the court may impose a civil or criminal sanction—but it may only impose a criminal sanction if the contemnor was also afforded the applicable constitutional rights. *Id.* at 864–65, 55 P.3d at 318–19. If the contemnor can avoid a sanction by doing the thing she had been previously ordered to do, and even if she was not afforded the heightened constitutional safeguards, then a sanction may be still imposed, albeit only a civil one. *Id.*

With this in mind, the case at hand presents a glaring issue. The contempt alleged against Horn consisted of her doing something the court had forbidden in its preliminary injunction—soliciting clients. Therefore, the contempt could *only be sanctioned criminally* since she was unable to purge herself of her past conduct. In other words, she could not undo what she had done. Facing a contempt action with only a criminal remedy available, Horn was entitled to the heightened constitutional protections associated with criminal sanctions. Yet, the record is clear that Insure Idaho was not seeking criminal sanctions and, as all parties recognized at the outset of the trial, Horn had not been afforded the constitutional rights to which she was entitled for a criminal trial. However, the parties and the court also recognized that civil sanctions could not be imposed due to the nature of the violation because the acts could not be purged.

Despite acknowledging this conundrum, the district court conducted what it referred to as a "civil contempt proceeding" with full knowledge that it could not lawfully impose *any sanction* on Horn, let alone a civil sanction. Ultimately, the district court found Horn in contempt but it did

9

not impose a sanction. The court explained that its reasoning for proceeding in such a manner was its desire to make "clear to the parties in this proceeding that the [c]ourt [did] not view its preliminary injunction [o]rder as being unenforceable[,]" and because "[i]t is important that the [c]ourt retain its inherent authority to enforce its orders."

Thus, a novel question surfaces: does a district court err in proceeding with what it deems to be purely a "civil contempt" trial where there was no ability for the defendant to purge herself of the contempt? While we acknowledge the importance of preserving the inherent authority held by courts of law, this is not accomplished by simply going through the motions of an ineffectual contempt trial. We hold that it was an abuse of discretion for the district court to conduct a contempt trial knowing that it lacked the ability to impose any sanction. Simply put, it is a waste of the court and the parties' time and resources to conduct a proceeding that could afford no remedy and serve no actual legal purpose. When it is clear before the proceedings commence that neither criminal nor civil sanctions can be imposed, it is an exercise in futility to hold what essentially amounts to nothing more than a moot court trial. Here, the district court possessed no lawful ability to sanction Horn, but proceeded, nonetheless. Importantly, we note that this is markedly different from a scenario where the court simply *declined* to impose a sanction after a finding of contempt, despite its ability to do so.

We will not speculate why Insure Idaho opted not to seek a criminal contempt sanction against Horn. However, even if it did not wish to see her jailed or fined, this does not give the court leeway to hold a contempt trial that would ultimately prove to be toothless. We also note that, contrary to the district court's explanation, courts of law retain their inherent authority when they decline to act in circumstances where it would be unwarranted and ineffectual to do so. Indeed, a trial court can best demonstrate its inherent authority by correctly following the procedures that dictate the way it must wield that authority. Accordingly, we conclude that it was an abuse of discretion for the district court to both hold a contempt trial and later find Horn in contempt when it lacked any ability to sanction her.

2. *The district court erred in determining that Horn solicited HF Construction in violation of the preliminary injunction.*

Beyond erring by conducting a contempt trial without the ability to impose a sanction, the district court also erred in interpreting the term "solicitation" and applying it to Horn's conduct to find that she had violated the preliminary injunction. We take this opportunity to clarify the plain meaning of solicitation under Idaho law and the conduct that falls within its ambit. We do so for

10

the sake of "judicial economy" and so that on remand the "trial court can be correctly advised on the law as it relates to all the issues of the case." *Keeven v. Wakley* (*In re Est. of Keeven*), 110 Idaho 452, 457, 716 P.2d 1224, 1229 (1986).

The facts that led the court to conclude that Horn had solicited Insure Idaho customers are recounted above in the Statement of Facts. To briefly recap, after HF Construction, a *former* Insure Idaho customer, repeatedly reached out to Horn and Henry Insurance requesting to do business with them, Horn and Henry Insurance finally agreed and accepted HF Construction's business. At its owner's request, Horn and Henry Insurance helped HF Construction cancel an existing auto insurance policy with FIG (an unrelated insurance agency), which HF Construction had *previously* held through Insure Idaho. Horn also helped HF Construction increase the coverage on the auto policy and obtain an additional umbrella policy so that HF Construction would be in compliance with the insurance requirements demanded by a particular customer (BHH). This was also done at HF Construction's request. Based on these actions, the district court determined that Horn solicited HF Construction in violation of the preliminary injunction.

On appeal, Horn maintains that she did nothing that amounted to solicitation under the plain meaning of the term, and that the district court's finding of contempt is not supported by substantial evidence. She points out that it was Fernandez who sought her out; she did not petition, ask, or plead with him to bring his business to Henry Insurance. Indeed, it was the exact opposite. Horn notes the affidavit from Fernandez she presented to the district court, which stated that he sought out Horn and was not solicited by her. On the other hand, Insure Idaho defends the district court's conclusion, arguing that it is supported by substantial and competent evidence. Insure Idaho points to four things as evidencing solicitation: Horn "entreating [Henry Insurance] to allow her to write the auto policy; cancelling the auto policy with FIG on HF Construction's behalf; increasing the coverage on the auto policy to the benefit of her employer Henry Insurance; and writing an additional umbrella policy for HF Construction."

The dispute in this case turns on the distinction between actively soliciting business and merely accepting business. Whether the simple acceptance of business constitutes solicitation is a confounding question for which other jurisdictions have supplied varying answers. On the one hand, some courts hold that the plain meaning of "solicitation" requires the initiation of contact by the restricted party. *See Mona Elec. Grp., Inc. v. Truland Serv. Corp.*, 56 F. App'x 108, 110–11 (4th Cir. 2003) (holding that "the plain meaning of 'solicit' requires the initiation of contact"); *Akron*

11

*Pest Control v. Radar Exterminating Co.*, 455 S.E.2d 601, 602–03 (Ga. Ct. App. 1995) (holding that a violation of a non-solicitation agreement required affirmative action, not just the acceptance of a customer's business); *Res. Assocs. Grant Writing & Evaluation Servs., LLC v. Maberry*, No. CIV 08-0552, 2009 WL 1232133, at *11–13 (D.N.M. Apr. 23, 2009) (concluding that a non-solicitation agreement does not prohibit one from accepting business from former customers who approach them first).

On the other hand, some courts have observed that "[t]he line between solicitation and acceptance of business is a hazy one[.]" *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 10 (1st Cir. 2013). As a result, these courts have declined to adopt a "hard and fast rule" requiring the initiation of contact to make a finding of solicitation, instead of conducting a case-by-case inquiry. *Bessemer Trust Co., N.A. v. Branin*, 949 N.E.2d 462, 469 (N.Y. 2011). In this way, these courts leave room for the possibility that solicitation can occur even when the former customer initiates the contact, depending on the specific facts presented. *See Harnett*, 731 F.3d at 12 ("[T]he better view holds that the identity of the party making initial contact is just one factor among many that the trial court should consider in drawing the line between solicitation and acceptance in a given case."); *Scarbrough v. Liberty Nat'l Life Ins. Co.*, 872 So. 2d 283, 285 (Fla. Dist. Ct. App. 2004) (observing that one can "solicit another's business regardless of who initiates the meeting"). Viewing the plain meaning of the term solicitation under Idaho law, we conclude that this second approach is the wiser one.

For guidance on remand, we take this opportunity to do what should have been done following the preliminary injunction hearing: define solicitation as used in the Non-Solicitation Agreement and clarify what actions fall within its scope. While this Court has never had the occasion to define what constitutes "solicitation" for purposes of enforcing a restrictive covenant, we agree with the parties that the term "solicitation" is unambiguous. It means "[t]he act or an instance of requesting or seeking to obtain something; a request or petition." *Solicitation*, Black's Law Dictionary (12th ed. 2024). Other helpful formulations include: "To appeal to (for something); to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain." *People v. Phillips*, 160 P.2d 872, 874 (Cal. Dist. Ct. App. 1945) (quoting 58 C.J. 804, 805). Consistent among these definitions is the understanding that the plain meaning of "solicitation" requires some overt act initiated by one party, seeking something in return from a

second party. This is the correct legal standard that is to be applied when analyzing solicitation, and courts should clearly enunciate this standard when doing so. Here, the district court erred in failing to do just that.

We hold that the plain meaning of solicitation requires some overt act initiated by one party, seeking something in return from a second party. However, while the initiation of contact by a party is a key factor to be considered in analyzing whether a solicitation has occurred, we decline to assign it "talismanic" respect. *Harnett*, 731 F.3d at 12. Instead, the reviewing court should consider the totality of the specific facts of the case before it, such as the standard practices of the industry implicated, the setting in which a case arises, the nature of the communications, and any other facts relevant to determining whether a solicitation has occurred. Simply put, the court should analyze whether the restricted party has entreated, implored, pleaded, or petitioned for the business at issue by considering the totality of the circumstances. Although "the difference between accepting and receiving business, on the one hand, and indirectly soliciting on the other, may be more metaphysical than real," *Alexander & Alexander, Inc. v. Danahy*, 488 N.E.2d 22, 30 (Mass. App. Ct. 1986), one thing is certain: the restricted party needs to take *affirmative* action that entreats, implores, pleads, or petitions for the business at issue.

To be clear, the mere acceptance of business, without more, does not fall within the plain meaning of solicitation; nor can a court infer solicitation from the simple communication between parties alone. Accepting business and soliciting business are two different things; and not all communication is a solicitation. Existing Idaho caselaw bears out this conclusion. In *R. Homes Corp. v. Herr*, the Idaho Court of Appeals addressed solicitation in the context of fiduciary duties. 142 Idaho 87, 91, 123 P.3d 720, 724 (Ct. App. 2005). There, the court considered a claim by an employer that his employee had solicited customers in violation of the employee's duty of loyalty. *Id.* at 89, 123 P.3d at 722. The court held that no solicitation had occurred where there was no evidence that the employee had "sought out these customers . . . at any time, much less that he solicited them during his employment[.]" *Id.* at 91, 123 P.3d at 724. Due to the lack of such evidence, it was "unreasonable to infer solicitation solely from the fact that customers who once did business with [the employer] thereafter took their business to [the employee]." *Id.* While it analyzed solicitation in the context of the duty of loyalty rather than a non-solicitation agreement, the court's reasoning of what solicitation requires is equally applicable—the unambiguous

13

meaning of solicitation remains the same in both contexts. As a result, it is "unreasonable to *infer* solicitation" from the sole fact that one accepted the business of another. *Id.* (emphasis added).

Turning to the case at hand, we conclude that under the plain meaning of the term, and based on the totality of the circumstances in the record, Horn did not "solicit" Insure Idaho customers in violation of the preliminary injunction. The undisputed facts show that Horn and Henry Insurance simply accepted business from HF Construction, a company that independently decided to take its business to Henry Insurance. There are no facts demonstrating that Horn sought out Insure Idaho customers, asked or pleaded for their business, or otherwise petitioned them in any subtle or overt way. Here, Fernandez persistently sought out the business of Horn and Henry Insurance, even after they turned him away multiple times. Eventually, Horn and Henry Insurance agreed to accept his business and help him obtain an insurance policy. No evidence calls into question Fernandez's independent desire to leave Insure Idaho, to work with Horn, and to seek her out for that purpose. In fact, Fernandez filed an affidavit expressly stating that he approached Horn on his own accord and was not solicited.

A close examination of Insure Idaho's proffered evidence of solicitation is revealing. First, Insure Idaho posits that "entreating [Henry Insurance] to allow her to write the auto policy" is a ground upon which the district court properly found solicitation. Yet, communicating with one's employer does not amount to solicitation of a third party. Horn's conversations with Henry Insurance about their ability to permissibly service HF Construction's policy evince no more than an ordinary business function; they were weighing the potential risks of an action against the potential benefits. Second, Insure Idaho points to the fact that Horn "cancell[ed] the auto policy with FIG on HF Construction's behalf[.]" However, this was done at Fernandez's direction, which cuts directly against a finding of solicitation. Insure Idaho also points to Horn "increasing the coverage on the auto policy to the benefit of her employer Henry Insurance," and "writing an additional umbrella policy for HF Construction." Again, these things were done at Fernandez's request; it was not Horn driving these decisions. Her doing something at the request of a customer, without soliciting the customer to make such a request, is not solicitation of the customer's business.

Considering the totality of the facts before us, the evidence of solicitation is meager and the record lacks substantial and competent evidence to support the district court's finding of solicitation. *Carr v. Pridgen*, 157 Idaho 238, 242, 335 P.3d 578, 582 (2014). Accordingly, we

14

conclude that Horn's actions in this instance did not constitute solicitation of HF Construction's business and that the district court erred in finding Horn in contempt.

> 3. *The district court did not err by granting Henry Insurance's motion for involuntary dismissal of the contempt motion against it.*

Having established that the district court erred in finding Horn in contempt, we next address whether the district court properly granted Henry Insurance's motion for involuntary dismissal from the contempt proceedings. In its cross appeal, Insure Idaho challenges the dismissal of its contempt motion against Henry Insurance. Following Insure Idaho's case-in-chief, the district court dismissed the contempt charges against Henry Insurance for two reasons: (1) Insure Idaho's charging affidavit was insufficient as to Henry Insurance, and (2) no violation of the preliminary injunction had been proven because HF Construction was not one of the five companies Henry Insurance was enjoined from soliciting.

On appeal, Insure Idaho argues that the district court erred in finding that the charging affidavit was insufficient; however, Insure Idaho never addresses the second basis for the court's decision to dismiss Henry Insurance—that HF Construction was not among the five companies Henry Insurance was enjoined from soliciting. As we have noted, a district court's order will be affirmed if the appellant fails to address all grounds on which the district court based its order. *Lee v. Willow Creek Ranch Ests. No. 2 Subdivision Homeowners' Ass'n, Inc.*, 164 Idaho 396, 399–401, 431 P.3d 4, 7–9 (2018) (affirming the district court's ruling because the appellant did not address each ground upon which the district court based its grant of summary judgment). Therefore, the failure to address the alternate basis for the district court's ruling is fatal to Insure Idaho's cross appeal on this issue.

Here, the district court correctly held that HF Construction was not within the scope of the preliminary injunction entered against Henry Insurance. The preliminary injunction only enjoined Henry Insurance from soliciting five specific companies and HF Construction was not one of them. Because Insure Idaho fails to address this basis for the dismissal on appeal, we affirm the district court's order dismissing Henry Insurance from the contempt proceeding.

We note that Insure Idaho also argues that the district court erred by failing to apply the doctrine of *respondeat superior* to find Henry Insurance in contempt for Horn's conduct. However, because we have determined that the district court erred by finding Horn in contempt, we need not address the issue of whether such a finding can be imputed to Horn's employer.

15

*4. The district court erred in granting the preliminary injunction.*

Generally, "a contemnor may not challenge the merits of the underlying injunction as a defense to contempt charges." *Snap! Mobile, Inc. v. Vertical Raise, LLC*, 173 Idaho 499, 520, 544 P.3d 714, 735 (2024) (citations omitted). "When a court has jurisdiction over the suit and the parties before it, its orders are to be obeyed until they are set aside by appropriate proceedings." *Watson v. Weick* (*In re Weick*), 142 Idaho 275, 278, 127 P.3d 178, 181 (2005). However, because some of the errors made in the district court's contempt analysis mirror errors made in its decision granting the preliminary injunction, we take this occasion to address the deficiencies in the Court's analysis. Before we do so, we note that we can review the preliminary injunction in this case without issuing an advisory opinion, contrary to Insure Idaho's assertions. Indeed, the district court's decision to grant a preliminary injunction set the stage for this appeal, and further error may be unavoidable if the injunction, as it now stands, continues to remain in place. For this reason, we are compelled to address the errors made at the preliminary injunction stage to provide guidance and avoid confusion on remand. *See Keeven v. Wakley* (*In re Est. of Keeven*), 110 Idaho 452, 457, 716 P.2d 1224, 1229 (1986).

    i.    <u>Because the judgment of contempt is a final judgment, the preliminary injunction it was based upon is an order subject to review under Idaho Appellate Rule 17(e)(1).</u>

Horn and Henry Insurance challenge the propriety of the preliminary injunction on appeal, arguing that the district court failed to follow the proper procedure in issuing the injunction. In response, Insure Idaho maintains that the preliminary injunction was properly issued. Additionally, Insure Idaho contends that the "merits and scope of the [p]reliminary [i]njunction" are not issues properly before this Court, and that ruling on the matter would be tantamount to an advisory opinion. It argues that since the injunction is an interlocutory order, there has been no final judgment entered on the underlying lawsuit.[2]

Unlike federal law, interlocutory orders are generally not appealable in Idaho state courts unless they are certified for appeal as partial judgments. *See* I.R.C.P. 54(a). We have previously held that a preliminary injunction is "not an appealable order as required by Idaho Appellate Rule 11." *Beard v. Hanny*, 120 Idaho 689, 690, 819 P.2d 107, 108 (1991). However, "[a]ny order of or

---

[2] Shortly after Horn appealed from the judgment of contempt, Insure Idaho asked this Court to dismiss all issues on appeal relating to the district court's interlocutory orders, including the preliminary injunction. We denied the motion, but allowed the parties to brief the merits of the issue.

judgment of contempt" is appealable as a matter of right. I.A.R. 11(a)(4). Here, Horn appealed the order of contempt in accordance with Idaho Appellate Rule 11(a)(4). Therefore, the question becomes whether this Court can review a preliminary injunction order on appeal of a trial court's order of contempt, where it serves as the legal basis for the finding of contempt. As explained below, the answer is yes.

Idaho Appellate Rule 17(e)(1) indicates that, upon the appeal of a final order or judgment, all interlocutory judgments and orders entered prior to the appealed order are deemed to be included on appeal:

> (1) Designation of the Judgment or Order Appealed From. The notice of appeal shall designate and have attached to it a copy of the judgment or order appealed from which shall be deemed to include, and present on appeal:
>
> (A) *All interlocutory judgments and orders entered prior to the judgment, order or decree appealed from*, and
>
> (B) All final judgments and orders entered prior to the judgment or order appealed from for which the time for appeal has not expired, and
>
> (C) All interlocutory or final judgments and orders entered after the judgment or order appealed from except orders relinquishing jurisdiction after a period of retained jurisdiction or orders granting probation following a period of retained jurisdiction.

I.A.R. 17(e)(1) (emphasis added). Furthermore, "[i]f there is a final appealable order in a case and an appeal is properly taken from that order, then all other orders which would otherwise not be appealable may be considered by this Court." *Keeven*, 110 Idaho at 456–57, 716 P.2d at 1228–29. As we have explained, this is permitted so that

> the trial court can be correctly advised on the law as it relates to all the issues of the case. Otherwise, much judicial time and resources may be wasted because the parties might have to take another appeal in order to test those same interlocutory orders which this Court could have decided when it decided the final appealable orders in the first appeal.

*Id.* at 457, 716 P.2d at 1229; *see also Utah Ass'n of Credit Men v. Budge*, 16 Idaho 751, 758, 102 P. 390, 392 (1909) ("[W]hen an appeal is taken from an appealable order or judgment, this [C]ourt has the jurisdiction and authority to review any and all orders and decisions made by the trial court to which the party has duly excepted and preserved his objection and exception in the manner and form provided by law."). Because Horn and Henry Insurance have brought a proper appeal of a final order, we may consider all other previously entered orders, even if such orders were not individually appealable in their own right.

17

Insure Idaho argues that this Court would be rendering an advisory opinion if it weighed in on the preliminary injunction prior to a full adjudication of the case. Insure Idaho's argument is mistaken. While it is well established that "[t]his Court is not empowered to issue *purely* advisory opinions," *Taylor v. AIA Servs. Corp.*, 151 Idaho 552, 569, 261 P.3d 829, 846 (2011) (emphasis added) (citation omitted), there is nothing "advisory," let alone "purely advisory," about an appellate court addressing the legal and factual bases for a finding of contempt.

Insure Idaho misperceives the nature of an advisory opinion. An advisory opinion is a "nonbinding statement by a court of its interpretation of the law on a matter submitted for that purpose." *Advisory Opinion*, Black's Law Dictionary (12th ed. 2014). The request for an advisory opinion essentially asks the court to issue an opinion that does not adjudicate actual, established facts in a way that affects the rights of the litigants before it. *See Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241 (1937) (noting that, to avoid being an advisory opinion, the question decided must concern "a real and substantial controversy [seeking] specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts"). Because we have not been asked to disclose how we would rule on an issue that *might* come before us in the future, the question presented in this case is certainly not hypothetical and markedly different from a request for an advisory opinion. Indeed, this is a "real and substantial controversy" that is before us now.

In sum, the order of contempt is a final appealable order, and all prior interlocutory orders are also included on appeal. I.A.R. 17(e)(1). Our resolution of the issues presented on appeal concerning the preliminary injunction—such as interpretation of the Non-solicitation Agreement and the proper procedure for issuing a preliminary injunction under Idaho Rule of Civil Procedure 65—will be binding on the district court and the parties on remand and serve to guide further proceedings below.

ii. By failing to address whether there was a "substantial likelihood of success on the merits," the district court failed to adequately address both prongs of the conjunctive preliminary injunction standard.

Having established that the preliminary injunction is subject to our review, we now turn to Horn's and Henry Insurance's arguments that the preliminary injunction is invalid because it was granted on improper procedure. The district court enjoined Horn from soliciting Insure Idaho customers for a period of 13 months, and further enjoined both Henry Insurance and Horn from soliciting any additional insurance products from the five companies that had already moved their

business from Insure Idaho to Henry Insurance. Horn and Henry Insurance assert that the district court abused its discretion in granting the preliminary injunction because it failed to apply both prongs of the conjunctive standard set forth in Idaho Rule of Civil Procedure 65(e)(1) and (2).

A preliminary injunction, known as the "strong arm of equity," is an extreme remedy that "must be exercised with great restraint." *Planned Parenthood Great Nw. v. State*, 172 Idaho 321, 325, 532 P.3d 801, 805 (2022). Idaho Rule of Civil Procedure 65 sets forth the criteria for issuing a preliminary injunction; the first two are relevant here:

A preliminary injunction may be granted in the following cases:

(1) when it appears by the complaint that the plaintiff is entitled to the relief demanded, and that relief, or any part of it, consists of restraining the commission or continuance of the acts complained of, either for a limited period or perpetually;

(2) when it appears by the complaint or affidavit that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury to the plaintiff[.]

I.R.C.P. 65(e)(1)–(2).[3]

This Court has recently explained that a party seeking an injunction must demonstrate at least two things under Rule 65(e)(1) and (2): first, the movant must show "a substantial likelihood of success on the merits" or a "clear right" to the ultimate relief requested in the underlying lawsuit; and second, the movant would suffer "irreparable harm" if the injunction were not issued. *Planned Parenthood Great Nw.*, 172 Idaho at 324, 532 P.3d at 804. Because the movant must demonstrate both a likelihood of success on the merits *and* irreparable harm, Rule 65(e)(1) and (2) is a conjunctive standard. *Id.*; *see also Munden v. Bannock County*, 169 Idaho 818, 829, 504 P.3d 354, 365 (2022) (noting that, under Rule 65(e), a preliminary injunction "is granted only in extreme cases where the right is very clear and it appears that irreparable injury will flow from its refusal") (citation and internal quotation marks omitted)). As a result, a district court's order granting a preliminary injunction under Rule 65(e)(1) and (2) must adequately address both requirements under this conjunctive standard.

We turn now to the first requirement of the conjunctive standard set forth in Idaho Rule of Civil Procedure 65(e)(1)—likelihood of success on the merits. In addressing this requirement, the district court restricted its analysis to just one factor: whether the Non-Solicitation Agreement was

---

[3] While Insure Idaho's motion also requested the preliminary injunction under Rule 65(e)(3), all parties agree that the relevant inquiry pertains only to Rules 65(e)(1) and (2), as the district court did not purport to grant the injunction under Rule 65(e)(3).

19

enforceable. The district court began its analysis by correctly noting that "[a] court is required to determine the enforceability of a noncompete or nonsolicitation [sic] agreement before it can grant a motion for a preliminary injunction." It then went on to determine that (a) the Agreement was supported by consideration; (b) Horn was a "key employee"; (c) the Agreement was reasonable as to duration, area, and type of employment; (d) the Agreement was reasonable in that legitimate business interests were being protected; and (e) the Agreement was reasonably tailored to the business interests at hand.

As a result of these findings, the district court concluded that Insure Idaho was likely to succeed in proving that the restrictive terms of the Non-Solicitation Agreement were provisionally enforceable. With that, the court ended its analysis of the likelihood of success requirement under Rule 65(e)(1) and went directly to an analysis of irreparable harm under Rule 65(e)(2). However, by moving on to a damages analysis without next determining whether Horn had actually breached the Agreement, the court failed to complete its analysis of Rule 65(e)(1). Therefore, because it focused on only *one element* of Insure Idaho's claims—whether the agreement was enforceable— the court's decision to grant the preliminary injunction was fundamentally flawed.

To analyze a plaintiff's likelihood of success on the merits, it is necessary to identify what constitutes the "merits" of the plaintiff's case. Here, Insure Idaho listed four causes of action in its complaint against Horn: injunctive relief, breach of contract, interference with contract, and interference with prospective economic advantage. It also alleged the latter two claims against Henry Insurance. It is worth noting that, despite including a claim for injunctive relief as a distinct cause of action against Horn, an injunction is merely a *remedy*, not a cause of action. *See Newton v. MJK/BJK, LLC*, 167 Idaho 236, 241, 469 P.3d 23, 28 (2020) ("Injunctive relief, however, is a remedy—not a cause of action."); *Madej v. Maiden*, 951 F.3d 364, 369 (6th Cir. 2020) (stating that "an injunction is a remedy, not a claim"). Thus, Insure Idaho's complaint only contained three actual claims against Horn: breach of contract, interference with contract, and interference with prospective economic advantage. Likewise, the complaint contained two claims against Henry Insurance: interference with contract and interference with prospective economic advantage. Weighing the "merits" of Insure Idaho's case against Horn and Henry Insurance required the district court to assess all of the elements of each cause of action and determine whether there was a likelihood of success on at least one cause of action.

20

In sum, it was not enough for the district court to merely conclude that the contract was enforceable. It is axiomatic that one cannot successfully bring a breach of contract claim unless a breach is proven. Likewise, proving the existence of an enforceable contract without also showing an "intentional interference" or "wrongful interference" cannot give rise to a successful claim for interference with contract or prospective economic advantage. *See Tricore Invs. LLC v. Est. of Warren*, 168 Idaho 596, 619, 485 P.3d 92, 115 (2021) (explaining elements of tortious interference with contract); *Trumble v. Farm Bureau Mut. Ins. Co.*, 166 Idaho 132, 151–52, 456 P.3d 201, 220–21 (2019) (explaining elements of intentional interference with prospective economic advantage). To find that Insure Idaho had demonstrated likelihood of success on the merits, the district court needed to determine whether Insure Idaho was likely to succeed on *each* element of at least one claim against the party being enjoined. Again, it is axiomatic that the inability to prove a necessary element of a claim spells ruin for the entire claim.

To be clear, we recognize that a preliminary injunction proceeding need not always become a full-blown trial on the merits. However, to determine that the plaintiff is likely to succeed on the merits, the issuing court is required to analyze each element of the relevant claim that underlies the plaintiff's case. By issuing such relief, absent a full analysis, the court risks inflicting irreparable harm on an innocent party. *See Planned Parenthood Great Nw.*, 172 Idaho at 325, 532 P.3d at 805. Because the district court erred by granting the injunction despite failing to address whether Insure Idaho was likely to succeed on each element of at least one claim against the parties it sought to enjoin, we conclude that the court abused its discretion by failing to comply with the standard for preliminary relief set forth in Idaho Rule of Civil Procedure 65(e)(1) and (2).

Importantly, this error sent the district court down a wayward path that led to further errors. For example, its failure to analyze the elements of each claim deprived it of the opportunity to examine the central issue in this case: whether Horn's actions likely constituted a "solicitation" of Insure Idaho's business in violation of the Agreement. Notably absent from the district court's order is any explanation or analysis of this essential issue. In fact, in granting the injunction, the district court never attempted to define what it means to "solicit" business and repeatedly conflated non-solicitation agreements with non-competition agreements, even though they are two distinct covenants. These errors and misconceptions seeped into the district court's subsequent analysis of "irreparable harm," the second requirement of the conjunctive standard. There, the district court concluded that Horn had solicited Insure Idaho customers in a manner that put it at risk of

irreparable harm *without ever stating the standard under which it determined Horn had solicited customers*.

Put simply, the district court's failure to fully analyze the first requirement under the conjunctive preliminary injunction standard doomed the rest of its analysis from the outset. It is hard to see how the district court could conduct an analysis of Insure Idaho's likelihood of success, or whether Insure Idaho was at risk of irreparable harm, without first setting forth the legal standard under which it was analyzing Horn's conduct. Moreover, it only invites future litigation to restrain someone from an action (solicitation) without defining what conduct the term entails. Indeed, in this case, the failure to address what constituted solicitation directly led to the contempt proceeding that is discussed above.

Additionally, the district court erred by failing to address whether the Agreement was enforceable against Henry Insurance in its analysis of Insure Idaho's likelihood of success. This is critical because, as Henry Insurance notes, it was not a party to the Agreement, which was signed only by Horn and Insure Idaho. The district court never addressed whether the Agreement's provisions were properly enforceable against Henry Insurance as a third party. Yet, without any analysis on this point, the district court enjoined Henry Insurance from soliciting any additional insurance products from five former Insure Idaho customers that had already moved their business, of their own volition, to Henry Insurance. Without the requisite finding that the Agreement was enforceable against Henry Insurance, the district court's injunction may have operated as a restriction on Henry Insurance's ability to engage in lawful conduct. This not only renders the district court's analysis insufficient as to Insure Idaho's likelihood of success against Henry Insurance, but it also renders the order overly broad. *See Snap! Mobile, Inc. v. Vertical Raise, LLC*, 173 Idaho 499, 523, 544 P.3d 714, 738 (2024) (noting that a preliminary injunction is overly broad when it restrains lawful conduct).

Insure Idaho offers a post hoc justification in support of the district court's ruling: since Rule 65(d)(2)(C) allows a court to bind persons who are in "active concert" with another enjoined party, the district court properly enjoined Henry Insurance as a third party in this instance. *See* I.R.C.P. 65(d)(2)(C) (stating that an injunction may bind "other persons who are in active concert or participation with anyone" otherwise properly enjoined by the rule). Relying on cases from other jurisdictions interpreting the federal counterpart to Idaho's Rule 65, Insure Idaho posits that a company can be properly enjoined based on a non-solicitation agreement, despite it not being a

party to the agreement. *See Las Vegas Novelty, Inc. v. Fernandez*, 787 P.2d 772 (Nev. 1990); *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1093 (E.D. Cal. 2012). However, the district court did not consider the theory that Henry Insurance was acting in "active concert" with Horn under Rule 65(d)(2)(C), nor did it make such a finding in its order. Even if the district court had found that Henry Insurance was acting in concert with Horn, it would have to be premised on the lawful enjoinment of Horn in the first place. In other words, Horn must first be found in breach of the Agreement for her conduct to be imputed to Henry Insurance. Because we have determined that the district court improperly enjoined Horn, a successful application of the "actively in concert" provision in Rule 65(d)(2)(C) is foreclosed. As a result, we conclude that the district court also erred in enjoining Henry Insurance without determining that the Agreement was enforceable against it.

## B. Both Horn and Henry Insurance were entitled to an award of attorney fees for the contempt trial, and they are also entitled attorney fees on appeal.

At the conclusion of the contempt trial, both Insure Idaho and Henry Insurance requested attorney fees. The district court declined to award attorney fees to Insure Idaho, determining that Insure Idaho was not a prevailing party on the motion for contempt. However, it awarded Henry Insurance reasonable attorney fees against Insure Idaho under Idaho Rule of Civil Procedure 75(m). On appeal, Insure Idaho argues that the district court erred by both failing to award it attorney fees, and by granting Henry Insurance attorney fees. Additionally, Horn and Henry Insurance ask this Court to award them attorney fees on appeal.

Idaho Rule of Civil Procedure 75(m) governs awards of attorney fees in the context of contempt proceedings:

> In any contempt proceeding, the court may award the prevailing party costs and reasonable attorney fees under Idaho Code [s]ection 7-610, regardless of whether the court imposes a civil sanction, a criminal sanction, or no sanction. The procedure for awarding costs and fees is as provided in Rule 54(e), except that the determination of the prevailing party is based upon who prevailed in the contempt proceeding rather than in the civil action as a whole.

I.R.C.P. 75(m). "Idaho Code sections 7-610 and 12-121 both permit the discretionary award of attorney fees to the prevailing party on appeal from a contempt proceeding." *Carr v. Pridgen*, 157 Idaho 238, 245, 335 P.3d 578, 585 (2014) (internal quotation marks omitted) (quoting *State Dep't of Health & Welfare v. Slane*, 155 Idaho 274, 279, 311 P.3d 286, 291 (2013)).

23

Here, Insure Idaho is not entitled to attorney fees below, as we have determined that it should not have prevailed against either party in the contempt proceeding. Additionally, we conclude that the district court did not err in granting Henry Insurance attorney fees after it was dismissed from the contempt proceeding. Insure Idaho makes the sole argument that the award should be vacated on the ground that the district court erred in dismissing Henry Insurance in the first place. Insure Idaho does not challenge the reasonableness of the attorney fees awarded.

Because we have determined that the district court properly dismissed Henry Insurance from the contempt proceedings, we uphold the award of attorney fees to Henry Insurance. Likewise, having determined that Horn should have been the prevailing party in the contempt proceeding, we also award Horn reasonable attorney fees for the contempt trial below under Idaho Code section 7-610. Horn was unable to request fees below because she did not prevail. Horn argues that since she should have prevailed below, she would have been entitled to a discretionary award of attorney fees. We agree. For the reasons explained above, we conclude that the contempt proceeding was improperly sought by Insure Idaho; the evidence presented did not support a finding of solicitation; and the contempt proceeding was predicated upon a fatally flawed preliminary injunction. Moreover, Henry Insurance was awarded attorney fees for prevailing in the same contempt proceeding below. Under such circumstances, we conclude that an award of attorney fees to Horn is just and permissible under Idaho Code section 7-610. However, we will remand the matter to the district court to determine the proper amount of fees incurred in defending against the contempt action.

As the prevailing parties on appeal, both Henry Insurance and Horn are also entitled to appellate attorney fees for the portion of their appeals concerning the contempt proceedings under Idaho Code section 7-610. As we noted in *Snap! Mobile, Inc.*, "Idaho Code section 7-610 provides that, in a contempt proceeding, 'the court in its discretion, may award attorney's fees and costs to the prevailing party.' " *See Snap! Mobile, Inc.*, 173 Idaho at 529, 544 P.3d at 744 (quoting I.C. § 7-610) (awarding the respondent attorney fees on appeal because this Court determined he was the prevailing party in a contempt proceeding).

While we have definitively ruled on the contempt proceeding presented on appeal, the remaining issues on appeal must still be litigated on the merits following remand. Therefore, it would be premature to award appellate attorney fees before the prevailing parties are ascertained below. *See Montierth v. Dorssers-Thomsen*, 173 Idaho 100, 114, 539 P.3d 578, 592 (2023). Once

a final judgment is entered, and "the district court makes its prevailing party determination on remand, any award of attorney fees made then may include attorney fees for this appeal." *Terra-W., Inc. v. Idaho Mut. Tr., LLC*, 150 Idaho 393, 401, 247 P.3d 620, 628 (2010). However, both Horn and Henry Insurance are entitled to costs on appeal. I.A.R. 40(a).

## IV. CONCLUSION

For the forgoing reasons, we conclude that the district court erred in entering a judgment of contempt against Horn. We further conclude that the preliminary injunction upon which the finding of contempt was predicated was issued on improper procedure. Thus, the judgment of contempt is reversed and we vacate the order granting the preliminary injunction. However, we affirm the district court's order dismissing Henry Insurance from the contempt proceeding and awarding it reasonable attorney fees incurred in defending itself from the contempt charge.

Having prevailed in her challenge to the judgment of contempt on appeal, we conclude that Horn also should have been awarded attorney fees below. We remand the determination of the proper amount of attorney fees to the district court. We also award Horn and Henry Insurance appellate attorney fees pertaining to the appeals of the contempt trial below. As to the remaining issues addressed on appeal, which have been remanded for further proceedings, we will refrain from awarding attorney fees at this juncture. However, Horn and Henry Insurance are entitled to recover their costs on appeal as a matter of course.

Chief Justice BEVAN, Justices BRODY, ZAHN, and MEYER CONCUR.